(January 11, 1899.)

## FIDELITY SAVINGS ASSOCIATION v. SHEA.

[55 Pac. 1022.]

BUILDING AND LOAN ASSOCIATIONS.—Where the borrower subscribes for shares in a loan association merely to obtain a loan, and is required to make monthly payments upon such shares, and by the terms of the contract the "maturity of the shares" extinguished the debt and cancels the stock, the borrower is a stockholder in fiction and not in fact, and the actual relation between the parties is only that of creditor and debtor.

RELATION OF PARTIES.—A contract of loan, in which the debtor agrees to pay monthly six dollars, which is applicable to the satisfaction of the principal debt, and seven dollars and fifteen cents interest monthly, upon the debt of $650, until the entire debt is paid, is equivalent to an interest charge of twenty-six and two-fifths per cent per annum, upon the principal of the loan, average time, and is usurious.

USURY.—Under the laws of Idaho, building and loan associations cannot charge, dirctly or indirctly, usurious interest on loans.

SAME—EVASION OF USURY LAWS.—One who comes into Idaho and loans money upon real estate there situated cannot evade and defeat the usury laws of the state by stipulating in the contract of loan that the contract shall be tested, and its validity determined by the laws of another state, such stipulation being against public policy, and not binding upon the debtor.

SAME—ATTORNEY FEE.—In a suit upon a usurious contract, it is error to allow the plaintiff under the stipulations of a mortgage securing the debt an attorney fee, as such fee is no part of the debt.

(Syllabus by the court.)

APPEAL from District Court, Bannock County.

C. A. Warner and Wyman & Wyman, for Appellant.

A payment upon a collateral is not a payment on the debt. (Endlich on Building Associations, 2d ed., sec. 477; *Philadelphia Mer. Loan Assn. v. Moore*, 47 Pa. St. 233.) There is nothing unfair or illegal about the contract. The interest and premium which is to be applied as interest on the note only amounts to thirteen dollars. and. twenty cents per year on each $100, or thirteen and one-fifth per cent per annum, which, at the time the

contract was made, was not a usurious rate of interest. It is only when we destroy this fair, reasonable and legal contract, which the borrower has by refusing to let the stock payments be applied on the stock, as the writing says they shall be, and substitute for it another contract, which the parties never made, by applying the stock payments on the principal of the loan from month to month as they are made, that we make an unfair, illegal, or usurious contract. The lower court fell into the error of doing this, by construing the case of *Stevens v. Home Sav. etc. Assn.,* 5 Idaho, 739, 51 Pac. 779, 986, decided by this court, as so holding. The law is universal that stock payments are not payments on the loan from time to time as they are made. This principle of law is well stated in 4 Am. & Eng. Ency. of Law, 2d ed., 1057; *State v. Hornbacher,* 42 N. J. L. 635. In a building and loan association, payments on a stock are simply investments in stock, whether the shareholder be a borrower or not; hence the borrower and shareholder are separate and distinct in their relations, and a payment of dues upon stock is not, *ipso facto,* a payment on the member's loan. (*Post v. Mechanics' etc. Assn.,* 97 Tenn. 408, 37 S. W. 216; *Reeve v. Ladies' Bldg. Assn.,* 56 Ark. 335, 19 S. W. 917; *People's Bldg. etc. Assn. v. Furey,* 47 N. J. Eq. 410, 20 Atl. 890; *Tilley v. American Bldg. etc. Assn.,* 52 Fed. 622.) It has become a well-recognized doctrine that payments of dues upon the stock are not payments upon the mortgage debt, and do not, *ipso facto,* work an extinguishment of so much of the mortgage, and hence they are not to be regarded as partial payments, and that therefore a statutory rule for computing interest on partial payments is inapplicable to them. (Endlich on Building Associations, 1st ed., sec. 452; Endlich on Building Associations, 2d ed., sec. 477; *Overby v. Fayetteville etc. Assn.,* 81 N. C. 56; *North America Bldg. Assn. v. Sutton,* 35 Pa. St. 463, 78 Am. Dec. 349.) Fines are not interest and cannot be construed to be interest upon interest. This question has been before the court and definitely settled. They are held to be "liquidated damages agreed to be paid for the nonperformance of a promise or covenant." (*Shannon v. Howard Mut.*

*Bldg. Assn.,* 36 Md. 382; *Ocmulgee Bldg. etc. Assn. v. Thomp-son,* 52 Ga. 427; *Goodman v. Durant Bldg. etc. Assn.,* 71 Miss. 310, 14 South. 146; *Hughes Bros. Mfg. Co. v. Conyers,* 36 South. 1093.)

S. C. Winters, for Respondent.

Plaintiff requires the borrower to subscribe for stock in order to get a loan. Then it charges interest, premium, dues and fines. The interest and the premium are both interest, and the fines are compound interest, which makes the whole contract usurious, and the action was brought prematurely. (*Stevens v. Home Sav. etc. Assn.,* 5 Idaho, 739, 51 Pac. 779-896; *Vermont Loan Assn. v. Hoffman,* 5 Idaho, 376, 49 Pac. 314; Idaho Rev. Stats., secs. 1263-1266; *Vermont Loan etc. Co. v. Tetzlaff,* ante, p. 105, 53 Pac. 104.) The maxim that "He who seeks equity must do epuity" fully applies in the case at bar. It principally applies to a party who is seeking relief in the character of plaintiff in the court. If the borrower of money upon usurious interest seeks to have the aid of court of equity in canceling, or procuring the instrument to be delivered up, the court will not interfere in his favor, unless upon the terms that he will pay the lender what is really due him. But if the lender comes into court to assert and enforce his own claim under the instrument, there the borrower may show that the contract is usurious and have the action dismissed without paying anything to the lender; as a court of equity will never assist a wrongdoer in effectuating his wrongful or illegal purpose. (1 Story's Equity Jurisprudence, Red. ed., sec. 64; *Hawkins v. Pearson,* 96 Ala. 369, 11 South. 304.)

Action by the Fidelity Savings Association against Patrick E. Shea, and others, to foreclose a mortgage securing payment on a loan. Judgment for defendants, and plaintiff appeals. Modified.

The plaintiff, a Colorado corporation, received the following application: "Application for Shares. No. of Certificate, 14,-122. Dated July ——, 1896. Office of the Fidelity Savings Association. Home Office, Denver, Colorado. Name, P. E.

Shea; . . . . occupation, boilermaker; P. O. address, Pocatello; street and number, Fourth ave,; county, Bannock; state, Idaho. I hereby apply for membership in the Fidelity Savings Association, and subscribe for stock, subject to the bylaws, rules, and regulations of said association, to the amount and of the class specified, viz., twelve shares at $100.00 per share, of monthly payment stock, amounting at maturity to $1,200. Agents are authorized to collect the first two payments of fifty cents on each $100 share, or, if subscription is made direct to the home office, the first payment must be remitted by bank check or draft, postal, or express money order. No agent is authorized to promise any specific loan. I understand that no agent has power to make any representation binding upon the association, other than authorized by the bylaws and literature issued by the association, or by letter of authority issued under the hand of the president, secretary, or manager of the association, and that the shares cannot be withdrawn until after twelve payments have been made, and that, if withdrawn before maturity, the association will reserve two dollars and fifty cents ($2.50) per share, and such sum, if any, as may be set aside by the board of directors, not exceeding one per cent per annum of par value of the shares, for the purpose of meeting any contingency that may arise, as provided by the stock certificate. And, whereas, the law of Colorado requires that a majority of all stock in force be voted at every legal election of the shareholders: Now, therefore, to prevent a failure of election in the event of my absence or neglect to send a proxy, I appoint J. S. Wolfe, 1st, E. M. Johnson, 2d, or E. H. Webb, 3d, as my proxy. Send certificate to ———. Signature of Applicant: P. E. Shea."

Pursuant to said application, the following certificate of stock was issued: "No. 14,122. Monthly payment stock. $1,200. The Fidelity Savings Association, Denver, Colorado. Be it known that P. E. Shea, of Pocatello, county of Bannock, state of Idaho, is the holder of twelve shares, of the face value of twelve hundred dollars, of the participating capital stock of the Fidelity Savings Association, and a member thereof. The

conditions of this membership are as follows: First. The share-holder agrees to pay the association fifty (50) cents per month on every one hundred ($100) dollars of face value of this certificate the last day of every month, commencing with the next month after the date of this certificate; provided that the holder may, at his option, after three months from the date hereof, make larger payments than herein required; and provided further, that if there shall be paid hereon in the aggregate the sum of forty-five ($45) per share at the end of four years after the date of this certificate, or at any earlier period, then no further payments need be made, and on request the secretary of the association shall, on presentation of the certificate, certify the same as fully paid up, except, however, that, if these shares are pledged as collateral to a loan, regular payments shall be made until maturity, unless waived by the board of directors of the association at a regular meeting. No notice of payments shall be required from the association. A failure to make payments when due will subject the stock to a fine of ten (10) cents per share each month during delinquency. Second. Should the holder hereof, by reason of sickness, loss of income, or other reason, be unable to make the payments due hereon, the pass-book, issued with this stock, may be presented or sent to the secretary of the association, with request that the stock be suspended for any period not exceeding six months at one time, which suspension shall be plainly marked in the pass-book by the secretary, and returned to the member; and during the period of suspension the stock shall not be subject to fine, nor share in the profits of the association; provided, that no stock can be suspended, if pledged as collateral to a loan, without the consent of the directors of the association. Third. These shares may be withdrawn, after twelve payments have been made, by giving thirty days' notice in writing, and surrendering this certificate and the accompanying pass-book; and the holder will be paid all money received, with interest at six per cent per annum, if withdrawn before maturity, or with full profits if carried to maturity, less fines, if any, and less a reserve fee of $2.50 per share, and provided,

if the board of directors deem it necessary to meet any contingency, less a further sum of one per cent per annum on the par value of these shares; provided that the holder or assigns may renew the said shares within twelve months after· withdrawal, and receive credit thereon for an amount equal to the reserve fee retained; provided, further, that shareholders in the aggregate can only withdraw during any month an amount equal to one-half of the receipts of the association for that month without the consent of the board of directors.   Fourth. Should members die, their personal representatives may surrender the shares at any time, if they shall elect to do so, and receive the full amount credited to such shares; or, if said shares shall·not be surrendered, they may remain in force, for the benefit of the estate, by payment of regular dues.   Fifth. These shares may be transferred at any time, subject to a lien of the association, for any unpaid balance due from the holder, by returning the certificate to the secretary for transfer on the books of the association, and in no other manner.   Sixth. This, the certificate giving the terms and conditions of these shares, the by-laws, and the application for membership, constitute the contract; provided, further, that all executed papers connected with any loan form part of the contract.   Seventh. Agents of this association have no authority to promise loans, or change any of the conditions of this contract.   Given under the seal of the Fidelity Savings Association, and under the hand of its president and secretary, at Denver, Colorado, this twenty-seventh day. of July, A. D. 1896.   M. B. Johnson, President.   [Seal] G. D. Campbell, Secretary."

And to secure the loan evidenced by said contract the respondents executed a mortgage, bearing date July 27, 1896, upon lots 3, 4, and 5, in block 322 in the town of Pocatello, county of Bannock, state of Idaho.   Appellant, by averment, pleaded *in haec verba,* certain statutes of the state of Colorado relating to building and loan associations, and also the by-laws of the appellant corporation.   The contract evidencing the loan, which is set forth at length in the complaint, is as follows: "$650.00.   Denver, Col., July 27th, 1896.   On or before ten years after date, I promise to pay to the Fidelity Sav-

ings Association, a corporation formed and existing under and by virtue of the laws of the state of Colorado, at its principal office, in Denver, Colorado, the sum of six hundred and fifty ($650.00) dollars, with interest thereon at the rate of six per cent per annum, together with the monthly premium on said sum, of sixty cents on every one hundred dollars thereof; interest and premium being payable monthly in advance, on the last day of each and every month, until this note is fully paid. This note is given in consideration of a loan made by the payee to the maker hereof, who is a member of said association, and the holder of twelve M. P. shares of stock in said association, evidenced by the certificate No. 14,122, which are hereby assigned as collateral to the said loan.    Said loan has been granted to and accepted by me as a member of said association, and with special reference to the laws of the state of Colorado for a construction of the contract hereby made.    Now, therefore, the maker hereof covenants and agrees to pay the interest and premium upon said sum, and the monthly payments upon said shares, promptly, as the same become due and payable, in installments of not less than thirteen and fifteen one-hundredths ($13.15) dollars per month, payable in advance on the last day of each month, commencing with date, and thereafter, until at the maturity of said shares the proceeds thereof shall be applied to repay the loan.    If any interest or premium evidenced by this note, or monthly payments upon the shares herein described, shall remain unpaid for sixty days after the same becomes due and payable, then the principal sum, as evidenced hereby, may at once, without notice, become due and payable, at the option of said association; and the withdrawal value of said collateral shares may, at the option of said association, be thereupon credited upon any balance due the association from said shareholder, as said association may elect.    And, if any payment evidenced hereby is not paid when due, fines shall be added as provided by the by-laws of the Fidelity Savings Association aforesaid, together with all costs of collection, including an attorney's fee of ten per cent if collected by an attorney, foreclosure proceedings, or by suit at law.    [Signed]    Patrick E. Shea, Mary E. Shea."

The mortgage provided that the appellant might keep the property insured, and pay the taxes thereon and it is so averred in the complaint, wherein it is averred that plaintiff paid insurance in the sum of four and one-half dollars, May 13, 1897, and October 15, 1897, the further sum of four and one-half dollars; that defendant neglected to pay the taxes on the mortgaged property, and appellant paid, July 15, 1897, taxes duly assessed on said property for the year 1897 in the sum of thirty-one dollars and fifty-six cents. The mortgage provided for attorney's fees in case of its foreclosure. Defendants made payments on said loan contract aggregating the sum of fifty-three dollars and thirty cents. The defendants demurred to the complaint, which demurrer was overruled. Findings of fact were made in accordance with the allegations of the complaint and the documentary evidence, and judgment foreclosing the mortgage for $696.26, without costs; the sum found due the plaintiff being the principal of the loan, less fifty-three dollars and thirty cents payments thereon, nine dollars insurance paid, thirty-one dollars and fifty-six cents taxes paid, and fifty-nine dollars attorney's fee allowed. This appeal is from the judgment, and on the judgment-roll.

QUARLES, J. (After Stating the Facts.)—Owing to the importance of this case, we have given the lengthy and very able argument of the appellant more than ordinary attention. But, after a careful and studious consideration in the record before us, we have arrived at the conclusion that it is to be regarded as coming within the rule laid down in the following cases, to wit: *Stevens v. Association*, 5 Idaho, 739, 51 Pac. 779; *Mills v. Association*, 75 N. C. 292; *Association v. Wilcox*, 24 Conn. 147; *Association v. Blackburn*, 48 Iowa, 385; *Gordon v. Associaiton*, 12 Bush, 110, 23 Am. Rep. 713; *Association v. Graham*, 7 Neb. 173. A careful consideration of the contract of loan, in connection with the entire record in this case, convinces us that the entire transaction is one of loan, that the issuance of shares to the borrower is a matter of fiction, and that part of the monthly payment which is called "monthly payments upon shares" is merely a trick, artifice, or subterfuge for the purpose of extorting from the debtor a usurious rate

of interest.  As evidence of the correctness of our conclusion, we quote from the brief of appellant the following language: "In the case at bar, P. E. Shea was carrying twelve shares of stock, but had a loan of only $650.  Had respondent, P. E. Shea, carried out his contract, by continuing payment until the stock was fully paid, there would have been with appellant association, to the credit of P. E. Shea, $1,200.  He would have been indebted to the association, on his note, $650.  Of the $1,200 to his credit, $650 would have been applied to the cancellation of his indebtedness, and the balance of $550 would have been paid to him in cash, or, if not drawn by him, as he had the right to do, would have remained with the association, and continued to draw dividends."  In other words, the borrower, although paying for the stock, does not become the owner of it, but, after paying the face value of it, he is entitled to what? The cancellation of his note, and the return to himself of $550. The object of the respondents was solely to obtain a loan of $650.  To do this they would, in the event suggested by the appellant, have made two hundred payments of thirteen dollars and fifteen cents each, amounting to the sum of $2,630, of which the appellant would have appropriated $1,430 as interest and "premiums" on the loan, and out of which the debtor, a fictitious shareholder (but who was never in fact a shareholder), would be entitled to the return of $550. Viewed in the light of appellant's construction, the contract is unconscionable.  It is conceded by the appellant that the three dollars and ninety cents monthly premium is purely interest, but appellant claims that the interest collected monthly, seven dollars and fifteen cents, amounts to the rate of thirteen and one-fifth per cent per annum on the loan, and is lawful interest; being less than the rate authorized by statute at the time of making the contract, and which might have been contracted for by stipulation.  We would agree with this contention if the monthly payment consisted of the interest only, but it does not.  In addition to collecting the interest on the entire amount of the loan, the appellant has exacted a monthly payment of six dollars upon the principal of the loan itself, so that the

amount of the principal debt is being reduced monthly, but the creditor, notwithstanding, is collecting interest on the entire amount. The subterfuge of calling payment of the principal of the loan by the term "maturing stock" does not change the nature of the payment. So long as the debtor does not become the owner of the stock, but the "maturity of the stock" extinguishes the debt, whereupon the lender cancels the stock, courts are not justified in holding that the transaction is other than that of loan; but it is the duty of the court to hold such transaction to be one of loan, and subject to the usury laws of the state. Now, suppose the certificate had called for six and one-half shares of stock, no other change being in the contract. To satisfy his note, the defendant would be compelled, if he did so entirely by the monthly payments therein stipulated to be made, to make one hundred and eight payments of thirteen dollars and fifteen cents each, and one of four dollars and thirty-eight and one-third cents; requiring, say for convenience, nine years. His debt would then be paid. But he would be paying in the principal from time to time, and, while continually returning the sum borrowed, he would be paying thirteen and one-fifth per cent interest per annum on the whole sum. He would not have the use of the $650 borrowed during the nine years. In fact, the average time that he would have it would only be four and one-half years; and, instead of paying thirteen and one-fifth per cent per annum, he would in fact have paid twenty-six and two-fifths per cent per annum. Or, instead of averaging the time that he would have the use of the money, average the amount that he would have during the entire time, and it would be $325 for nine years. He would have paid one hundred and eight and one-third interest payments of seven dollars and fifteen cents each, or in all $774.58, or interest at the rate of twenty-six and two-fifths per cent per annum—a usurious rate of interest. Under the guise of collecting "dues" on "stock," the appellant would have collected the amount of the loan and interest thereon at the rate of twenty-six and two-fifths per cent per annum. If the interest should be computed by the rule of partial payments that obtains, the rate would be found to be more than twenty-six and two-fifths per cent

per annum.  It seems strange that men will resort to so many schemes to oppress and extort unconscionable gains from their fellow-men, who by reason of poverty or misfortune are compelled to borrow money.  We are told in Holy Writ: "For whosoever hath, to him shall be given; and whosoever hath not, from him shall be taken even that which he seemeth to have." The record of this case shows that the appellant association has acted upon this idea.  It requires a great degree of intelligence, much sharpness, and keen shrewdness, to devise means and schemes to rob the unwary and unsuspecting debtor by extorting from him high rates of usurious interest under the semblance of living without the usury laws; yet such shrewdness is always accompanied by an absence of moral integrity or common honesty which does not appeal very strongly to the judge who is sitting in the capacity of chancellor, and whose duty it is to follow the law in administering equity.  There is no provision in chapter 11 of title 4 of our Civil Code that authorizes a building and loan association to extort from its debtors usurious rates of interest.

It is contended by the appellant that in the contract in this case are to be found two distinct contracts; i. e., one subscribing for stock, and one borrowing money, resulting in two relations between the parties; that is, corporation and stockholder in one instance, and debtor and creditor in the other.  We do not concede this contention, but we do concede that the relation between the corporation and its stockholders is distinct from that between it and its debtors, be they stockholders or not.  In the case at bar, we construe the entire contract to be one of loan; that it was entered into for the purpose solely of borrowing money by one of the parties, and lending by the other; that the relation of corporation and stockholder exists, not in fact, but purely in fiction; and that the object of the plaintiff in entering into the contract was purely for the purpose of increasing its capital by obtaining large returns for the use of its money.  In no case where the two relations are blended together, as in this case, and the stock and debt are both contemporaneously extinguished by monthly payments upon the debt or upon the so-called stock, will the contract be

treated by this court other than a contract of loan. We reaffirm the rules enunciated by this court in *Stevens v. Association,* 5 Idaho 739, 51 Pac. 779, and heartily commend what was said by the supreme court of North Carolina in *Mills v. Association,* 75 N. C. 292.

But it is contended by the appellant that the contract before us is a Colorado contract, and to be construed under, and its validity determined by, the laws of Colorado, it being so stipulated in the contract. It is true that under the statutes of Colorado which are set forth in the complaint, and tested by such statutes, the contract in question is not usurious. But under our statutes it is usurious. The by-laws of the plaintiff provide that no loan shall be made, except upon real estate security, and that the loan shall not exceed fifty per cent of the value of the security. If the appellant desires the contract in question enforced under and by the provisions of the statutes of Colorado, it must proceed to do so in Colorado. That stipulation in the contract relating to the Colorado statutes is not binding upon the respondents, nor upon the state, nor upon the courts of this state. If this was an action *in personam,* the rule might be different. But, to foreclose the mortgage in question, resort must be had to the courts of this state. Inserting the provision in the contract that the contract should be construed by the statutes of Colorado is mere subterfuge, resorted to for the purpose of evading and defeating the usury laws of this state, and such as this court will not enforce, it being contrary to public policy. When parties come into this state, whether artificial or natural persons, and loan money to a citizen of this state upon real estate security situated here, they must expect to have the validity of the contract determined by the laws of this state. (See *Trust Co. v. Hoffman* (decided by this court), 5 Idaho, 376, 49 Pac. 314.)

The trial court erred in allowing an attorney fee to plaintiff, as such fee is no part of the debt, but extraordinary costs, and as such cannot be recovered, under the provisions of section 1266 of the Revised Statutes.

The respondents contend that the principal debt was not due when this action was commenced, and that the judgment should

be reversed on that ground. There is nothing in this contention. The distinction between this case and the case of *Trust Co. v. Hoffman, supra,* in this respect, is marked. In the latter case, coupon notes were given for the interest falling due annually, while the principal debt fell due five years after date; and the provision in the mortgage as to maturity was that, if either of the interest notes should not be paid at maturity, the debt should become due. We held that, as the interest coupon notes by their terms provided for compound interest in advance, the said coupon interest notes were void. Those notes, being void, could not mature, and the principal notes by their terms were not due. In the case at bar, the contract provides for monthly payments of thirteen dollars and fifteen cents. The stipulation as to said payments is not void, the true question being as to their application. We hold that they must be applied upon the principal debt. Notwithstanding that, the appellant was entitled to said monthly payments; and, under the terms of the contract, it might elect to treat the entire debt as due, if the respondents should fail to make any of such monthly payments for sixty days. Respondents failed for more than sixty days to make one of such payments, and the appellant treated the debt as due. The action was not prematurely brought.

The judgment appealed from is modified by deducting therefrom the attorney fee of fifty-nine dollars allowed by the trial court, which sum the district court is directed to have credited upon the said judgment as of the date of the entry thereof, and the said judgment as so modified is affirmed. Costs of this appeal awarded to the respondents.

Huston, C. J., and Sullivan, J., concur.

### ON REHEARING.

(February 2, 1899.)

Per CURIAM.—Appellant has filed a lengthy petition for rehearing, consisting of fifty-four printed pages, which, outside of the statement of general principles of law not applicable to

the case, is remarkable only for poetical effusion and psychological erudition. So far as the particular case at bar is concerned, it calls our attention to no new principle of law or question of fact that was not carefully considered by this court on original hearing. Since reading the petition, we are more than ever convinced that the true nature of the entire transaction is correctly shown in the quotation in the original opinion from the appellant's brief, and are more firmly convinced of the duty and propriety of applying the usury laws to such transactions. Courts should not seek excuses by which associations that loan money, whether they claim to be acting solely upon benevolent principles or not, may, by the use of subterfuge, be exempted from the ordinary penalty of violations of the usury statutes. In its labored efforts to convince this court of its disinterested philanthropy in the part which it took in the transaction in question, in its petition for rehearing, *inter alia,* it says: "On the other hand, he never pays the principal, that being canceled by his shares." This brief quotation emphasizes the fact that the issuing of shares to respondents, and the alleged relation of shareholder by the respondents to the appellant, is mere subterfuge in order to permit the appellant to collect a usurious rate of interest. We are fully convinced that the conclusion reached in this cause is correct in law, and sanctioned by the principles of equity. A rehearing is denied.