(May 20, 1904.)

## FORD v. WASHINGTON NATIONAL BUILDING AND LOAN INVESTMENT ASSOCIATION.

[76 Pac. 1010.]

PLEA OF USURY—OPTION TO PAY BEFORE MATURITY—ESTOPPEL.

1. A contract whereby a loan is to be paid in a fixed number of monthly installments of $13 interest and $9.75 principal, and the aggregate amount of interest to be thus paid falls within the terms of the usury statute (Rev. Stats., sec. 1226), will not be relieved from the operation of such statute by reason of the fact that the contract reserves to the borrower an option to pay the entire debt at any time, and the earliest interest installments, prior to a reduction of the principal, fall within the legal rate of interest which may be charged.

2. In such case the subject of inquiry is whether or not the contract provides, either directly or indirectly, for the payment of a greater rate of interest than authorized by law.

3. The defense of usury may be pleaded by anyone claiming under and in privity with the borrower.

4. The doctrine of estoppel may not be invoked to defeat the plea of usury when interposed by any person otherwise legally entitled to interpose such plea.

5. *Anderson v. Oregon Mtg. Co.,* 8 Idaho, 418, 69 Pac. 130, distinguished and held not decisive of the questions raised in this case.

(Syllabus by the court.)

APPEAL from District Court in and for the County of Latah. Honorable Edgar C. Steele, Judge.

From a judgment in favor of the plaintiff ordering the cancellation of a mortgage, defendant appeals. Affirmed.

The facts are stated in the opinion.

Forney & Moore, for Appellant.

Assignments of error: 1. The trial court erred in adjudging the contract usurious—the principle announced by this court in *Anderson et al. v. Oregon Mtg. Co.,* 8 Idaho, 418, 69 Pac. 130, being applicable; 2. The contract herein differs from those in the cases of *Association v. Shea,* 6 Idaho, 405, 55 Pac. 1022; *Trust Co. v. Hoffman,* 5 Idaho, 376, 95 Am. St. Rep. 86, 49 Pac. 314, 37 L. R. A. 509, in that the debt could be paid at any time by the borrower, with interest at twelve per cent per annum and no more; 3. The evidence proved an estoppel upon the plaintiff's claim of usury under appellant's second defense; 4. On no theory has appellant received back his principal. (*Frost v. Pacific Savings Co.,* 42 Or. 44, 70 Pac. 814; *Irwin v. Washington Nat. Bldg. etc. Assn.,* 42 Or. 105, 71 Pac. 143.) The right to have money paid as usurious interest applied on the principal, or to recover the surplus, if any, after lawful interest has been paid, is a matter personal to the party making the payment and those in privy with him, which he may insist upon or waive, at his. pleasure, and of which his grantee cannot take advantage. (Thompson on Building and Loan Associations, secs. 260, 522; Tyler on Usury, c. 31, p. 417; *Bensley v. Homier,* 42 Wis. 635; *Ready v. Huebner,* 46 Wis. 692, 32 Am. Rep. 749, 1 N. W. 344; *Warwick v. Dawes,* 26 N. J. Eq. 548; *Reading v. Weston,* 7 Conn. 409.)

No appearance on behalf of the respondent.

AILSHIE, J.—This action was commenced by the plaintiff for the cancellation of a mortgage appearing of record against certain of her real estate in the city of Moscow. The defendant answered denying, among other things, the payment of the mortgage debt, and set forth the mortgage and alleged a balance due thereon praying judgment of foreclosure. The case was tried before the judge without a jury and judgment was entered in favor of the plaintiff. The defendant settled a statement and bill of exceptions and thereupon appealed from the judgment.

The questions presented by this appeal for our consideration are set forth in the following assignments of error: "1. The trial court erred in adjudging the contract usurious—the principle announced by this court in *Anderson et al. v. Oregon Mtg. Co.,* 8 Idaho, 418, 69 Pac. 130; being applicable; 2. The contract herein differs from those in the cases of *Fidelity Sav. Association et al. v. Shea,* 6 Idaho, 405, 55 Pac. 1022; *Vermont Loan etc. Co. v. Hoffman,* 5 Idaho, 376, 95 Am. St. Rep. 86, 49 Pac. 314, 37 L. R. A. 509, in that the debt could be paid at any time by the borrower, with interest at twelve per cent per annum and no more; 3. The evidence proved an estoppel upon the plaintiff's claim of usury upon appellant's second defense; 4. On no theory appellant received back his principal."

As suggested by the second assignment, the only material or essential difference between the facts upon which this case rests and those in *Fidelity Sav. Assn. v. Shea,* 6 Idaho, 405, 55 Pac. 1022, and *Stevens v. Home Savings etc. Assn.,* 5 Idaho, 741, 51 Pac. 779, is that in this case the borrower might at any time "or on before" seven years from the date of the contract pay off the entire debt by paying the annual interest of six per cent and annual premium of six per cent.

On the eighteenth day of May, 1893, Honorable W. C. Piper, then judge of the second judicial district of this state, made a written application to the Washington National Building and Loan Investment Association (a corporation), appellant herein, for a loan of $1,300, offering as security therefor a first mortgage on his residence property in the city of Moscow. At the time of making this application, Judge Piper was not a

member of the association, and under the by-laws of the corporation it seems that loans could not be made to anyone but members who had their dues paid up on their stock for at least six months. After going through with the regular routine, usually required by such companies, the mortgage was executed of date October 16, 1893, and was acknowledged on the eighteenth day of the same month. November 3, 1893, the association issued a check for $1,195 to "the Wash. Nat. Bank, account William C. Piper," which it had been agreed should be used to pay off a pre-existing mortgage indebtedness upon the same property on which the subsequent mortgage was given. Another check for the balance of $105 was issued to "William C. Piper or bearer," but was never delivered to the mortgagor, but was turned into the association for the ostensible purpose of paying the following items to the company: Membership fee, $16; attorney fee, $10; application, $13; cancellation fee, $7.50, and $58.50 for six installments on the stock, covering the six months' installments immediately preceding the loan as required by the by-laws. The actual sum, then, received on this loan was $1,195. By the terms of the contract Piper was to pay a fixed sum of $13 per month as interest and a monthly installment of $9.75 on the principal or stock, as it was termed by the contract. While the principal would be constantly diminishing, the interest payments would still remain fixed, and although starting out at a rate of about 12.56 per cent, by the end of seven years would exceed thirty-six per cent. It is true that if the debtor had paid the debt at such a time prior to the reduction of the principal that the monthly interest paid would not have raised the rate above eighteen per cent per annum, as allowed by law at the time of execution of the contract (Rev. Stats., sec. 1264), then no usury would ever have been collected or payable. But this was not done. This contract did not mature in full within that period of time, but only to the extent of the monthly principal and interest installments. It cannot be presumed that the contract was executed with any view to payment in any other manner or at any different time than that stipulated therein. The contract shows on its face the intent of the parties thereto. That intent was to charge

and collect under devious and specious pretexts what amounted to a higher rate of interest than that allowed by law. A contract of this kind granting an option to pay before maturity and where the interest grows into a usurious rate before such maturity is a usurious contract, and does not fall within the rule announced by the courts permitting a higher rate by way of a penalty after maturity where the debt is not paid at maturity. The test of usury, fixed by our statute (section 1266), is not what might have happened under possible contingencies, but rather, that if "a rate of interest has been contracted for greater than is authorized" by law it is usurious and must be so treated by the courts. The subject of inquiry in such cases is whether or not a contract has been made whereby, either directly or indirectly, a greater rate may be charged than that authorized by law. (*Vermont Loan etc. Co. v. Hoffman,* 5 Idaho, 376, 95 Am. St. Rep. 186, 49 Pac. 314, 37 L. R. A. 509; *Stevens v. Home Saving etc. Assn., supra; Fidelity Savings Assn. v. Shea, supra.*)

Does this fall within the rule announced in *Anderson v. Oregon Mtg. Co.,* 8 Idaho, 418, 69 Pac. 130? I would answer this in the negative. There may be expressions in that opinion which would look to the conclusion reached by the appellant here, but as I read that case, the only question material to its determination was whether or not the purchaser of the mortgaged premises who retained sufficient out of the purchase price of the land to cover the debt and agreed to pay the mortgage could be heard to say that the debt he thus agreed to pay was usurious. A majority of this court said he could not. That seems to me the utmost extent to which that case goes.

The last installment paid under this contract was in April, 1898, and on July 6, 1899, the mortgagor conveyed the mortgaged premises to Adele T. Piper, his wife. This deed contained full covenants of warranty, and among its covenants is the following: "That the same are free and clear of all former or other grants, bargains, sales, liens, taxes, assessments and encumbrances of whatever kind or nature soever, except taxes for year 1899; and that the above bargained premises in the quiet and peaceable possession of the said party of the second

part, her heirs and assigns, against all and every person or persons lawfully claiming or to claim the whole or any part thereof, the said party of the first part shall and will warrant and forever defend."

On the fifth day of October, 1899, Adele T. Piper, by deed containing like covenants and warranty, conveyed the premises to the plaintiff, Adele T. Ford. It is not contended by the appellant that either the purchaser, Adele T. Piper, or the plaintiff ever assumed or promised or agreed to pay the mortgage debt.

In this case the respondent is the purchaser of the entire legal and equitable estate of the mortgagor in and to the mortgaged premises, and is privy in estate with the original grantor. She has neither assumed nor agreed to pay the mortgage debt, neither does it appear that any sum whatever was retained by her from the purchase price of the land for the benefit of the mortgagee or for application upon the mortgage debt. The principal sum borrowed by her grantor having been repaid by him prior to conveyance, it would be reasonable and fair to assume that she took this property with notice of the usurious character of the contract and with knowledge that under the usury statute the debt was paid and liquidated, and that there was no further obligation thereunder chargeable against the estate. It seems to me that the defense of usury may be pleaded by anyone claiming under and in privity with the borrower. This view seems to have been taken by some very respectable authorities. (Thompson on Building and Loan Associations, p. 522; *Brolasky v. Miller,* 9 N. J. Eq. 807; *Lyon v. Welsh,* 20 Iowa, 579; Tyler on Usury, p. 406.)

We next come to the contention of appellant that the respondent and her grantors were estopped from raising the issue of usury in this case. The substance of appellant's contention under this assignment is that, since the loan association was so organized as to permit of the subscribers for stock paying up at any time they might desire to withdraw from the association, and at the same time receive a share of the net profits earned, numerous members might withdraw and receive their share of usurious interest collected under these contracts,

and thereafter this defense be interposed by other members and thereby diminish the proceeds to be received by the remaining members, and work an inequitable and unjust discrimination between the withdrawing members and those who remain in the association.   Our answer to this position is that the members of the association are presumed to know the law, and thus knowing that all such contracts as the one entered into in this case, executed to be enforced against real estate in Idaho, are usurious, and that if they so divide their unlawfully gotten profits as to enable one member to obtain an advantage over another, they cannot resort to a court of equity to give them relief.   When declaring dividends out of such usurious receipts, they must have known that every such contract for the enforcement of which they might be compelled to resort to the courts would be open to attack for its illegal provisions.   To allow the purposes and objects of the usury statutes to be thwarted and the law evaded by a corporate plan so unique would be an acknowledgment of the inability of the courts to look through a veneer of words and find the real object and purpose sought.   It seems to me that the doctrine of estoppel which prevents a party to a contract coming into court and seeking to have the court place a different construction upon his contract from that which he has placed upon it by his continuous actions and conduct, and thereby prejudice the rights of the other contracting party, should not be applied to prevent the enforcement of the usury statute.   The state has an interest in the enforcement of this statute, in that it receives the benefits of the penalty, and the statute therefore becomes more than a law protecting the necessitous borrower.

Respondent has aptly expressed this view of section 1266, Revised Statutes, as follows: "Section 1266, Revised Statutes, provides that the court shall impose the penalty prescribed for usury 'if it is ascertained in any suit, brought on that contract,' that a rate of interest greater than that authorized by the statute is contracted for, 'directly or indirectly.'   Under this statute usury is not a defense which a party may, or may not, invoke by pleading it.   The duty of enforcing the prohibition is imposed upon the court regardless of the plea by the

party; and the statute is a solemn declaration of the public policy of the state. A party cannot, therefore, estop himself from asserting this defense."

This position is substantially sustained by *Stevens v. Home Bldg. etc. Assn., supra; Fidelity Bldg. Assn. v. Shea, supra; Vermount Loan etc. Co. v. Hoffman, supra.* On estoppel, see *Cade v. Larned,* 109 Ga. 292, 34 S. E. 566; *Buquo v. Bank of Erin* (Tenn. Ch. App.), 52 S. W. 775; *Miles v. Kelly* (Tex, Civ. App.), 25 S. W. 724; *Reed v. Johnson,* 27 Wash. 56, 67 Pac. 381, 57 L. R. A. 404.

Appellant urges that the judgment should be reversed, for the reason that the court erred in finding that the principal sum received by Piper had been fully paid. According to the figures presented by appellant's brief, there is a balance of $46.80 due the association, and according to respondent's figures there would be a balance of $23.30 which respondent practically admits would still be due. This misunderstanding on the part of the court has evidently arisen from the variance between the allegations of defendant's answer and his proofs. In paragraph 7 of the defendant's "further, separate and second defense," it is alleged "that during this period the payments made on account of the Piper loan have been the sum of $689, and no more, and the payments on said stock, together with the dividends, aggregating the sum of $590.50, and no more." The same allegation as to payment of $689 interest and premium is found in paragraph 4 of defendant's "further, separate and third defense."

Mr. Vials, who was the association's manager during the period covered by this transaction, testified upon the trial concerning the amount paid as follows: "The total amount of installments paid on this building and stock loan amounted to $565.50. The total amount paid in, interest and premium on the loan, $687.70, making the total amount paid in, $1,253.20." The confusion evidently arose by reason of the defendant figuring all the while that the loan was $1,300, and the first $58.50 deducted for six installments was a payment on the loan, while the plaintiff proceeded on the theory that the loan was only $1,240.50, and that the $58.50 was never received by the bor-

rower. It seems that this confusion is more the fault of appellant than of respondent, and if the apparent discrepancy had been seasonably brought to the attention of the trial court it would undoubtedly have been corrected.

We cannot reverse the judgment on this account alone. We shall, however, decline to award respondent any costs, and that will fully compensate the appellant for all it would have been entitled to recover upon any basis of figuring which has been presented to us.

Judgment affirmed. No costs awarded.

Sullivan, C. J., and Stockslager, J., concur.