No. 32,128

THE RAILROAD BUILDING, LOAN AND SAVINGS ASSOCIATION, *Appellant*, v. FLOSSIE FITZPATRICK (formerly FLOSSIE BITTERS), and GROVER FITZPATRICK, Her Husband, S. L. BITTERS, and MRS. S. L. BITTERS, His Wife, *Appellees.*

(43 P. 2d 219)

Opinion filed April 6, 1935.

'H. W. Hart, of Wichita, *C. O. Conkey,* of Newton, *W. N. Banks, O. L. O'Brien* and *Walter L. McVey,* all of Independence, for the appellant.

*A. R. Lamb* and *Clement A. Reed,* both of Coffeyville, for appellee ·Flossie Fitzpatrick.

The opinion of the court was delivered by

THIELE, J.: This was an action to foreclose a mortgage, the questions raised by the appeal relating to the amount of credits allowable to the mortgagor under the building and loan association statutes.

The petition alleged a loan by the plaintiff association to defendant Flossie Bitters, afterwards Flossie Bitters Fitzpatrick, of the sum of $1,600, to evidence which she executed her note dated April 22, 1925, and to secure which she executed her real-estate mortgage; that the loan, note and mortgage were all part of one transaction and were made in accordance with the by-laws of the association. Copies of the note, mortgage and by-laws were attached to the petition. That as further security, the mortgagor assigned a certificate of stock in plaintiff association to it in accordance with the by-laws of the association, a copy of the certificate being attached; that the mortgagor had made payments of interest and dues to and including July, 1932, and was in default of all subsequent interest and dues; that there was due plaintiff from the mortgagor the sum of $1,600 with interest at ten per cent per annum from August 1, 1932, less the withdrawal value of her stock, alleged to be $1,109.95, and that plaintiff was entitled to have the stock canceled and the withdrawal value applied on the indebtedness. Further allegations need not be noticed, further than that a payment of insurance premium was made by plaintiff association for the defendant on December 1, 1932, in the amount of $4.40. The prayer was for the several amounts due, with interest, less the withdrawal value of the stock, and for the foreclosure of the mortgage and sale of the mortgaged real estate and application of the proceeds.

The note was a promise, on the maturity of the stock pledged, to pay the association $1,600, being the amount advanced on $1,600 of the capital stock of the association represented by certificate No. 25519, for sixteen shares, together with interest at ten per cent per annum, the same to be due and payable on the twenty-fifth day of each month thereafter until the principal sum had been fully repaid according to the constitution and by-laws of the association. To secure the note the stock was pledged, and the maker agreed to pay monthly dues of $9.60 on the stock, and monthly installments of interest of $13.33, together with all fines chargeable upon arrears of such payments, until the stock should fully mature and be fully paid in and of the value of $100 per share according to the terms and provisions thereof and of the constitution and by-laws. Provision for default is made, and in event of foreclosure and sale of the mortgaged premises "said association shall cancel said stock and apply the withdrawal value of the same as payment on the said indebtedness."

The mortgage was in proper form and made appropriate reference to the note, some of its provisions being repeated in substance.

The by-laws covered the field of operation of the association. Section 9 provided for a fine of ten cents a share against each stockholder failing to pay his monthly dues by the twenty-fifth of the month, the total of fines not to exceed dividends. Section 10 provided for withdrawal of installment shares on giving notice, the shareholder to receive his dues and a percentage of dividends credited according to the time of withdrawal, e. g., "after seven years and eighty-four payments, seventy per cent," and less in all cases all legally assessed fines, etc. Section 12 provided that dividends shall be apportioned on January 1 and July 1 of each year. Section 21 provided that the borrower shall pay in addition to his dues on shares pledged for a loan, interest at the rate of ten per cent in monthly installments by the twenty-fifth of the month.

The certificate of stock certified that Flossie Bitters was the owner of sixteen shares of class E installment stock of the value of $100 each, on which she agreed to pay sixty cents per share each month until maturity and at maturity the association agreed to pay her $1,600. It recited it was issued and accepted subject to the by-laws as printed thereon. While this certificate did not include all of the by-laws, it did include those to which specific attention is directed above.

The answer of Flossie Bitters Fitzpatrick admitted the execution of the note and mortgage and alleged payments of monthly installments up to and including July 21, 1932, and "that this defendant has paid to the plaintiff more than a sufficient amount to pay said note and mortgage in full, if the same had been properly credited upon said note and mortgage." It was further alleged that she was owner of sixteen shares of association stock and the dividends thereon; that the corporation had earned money which should have been credited as dividends, and that it should be compelled to account; that she should have credit on her indebtedness and judgment for the overplus, if any.

The reply was a denial of the new matter.

The trial was on October 19, 1933. Among other things, plaintiff's evidence showed there had been no payments on the principal of the loan, but interest had been paid to and including July, 1932; that dues on the stock had been paid to the same time and amounted to $835.20; that dividends had been credited in the sum of $392.51,

and upon cancellation the shareholder would be entitled to seventy per cent of the dividends under section 10 of the by-laws, or $274.75; that fines had been charged against the certificate from August, 1932, to August, 1933, inclusive, at the rate of $1.60 per month, amounting to $20.80, pursuant to section 9 of the by-laws; that the association had paid an insurance premium of $4.40 on December 1, 1932, and was entitled to ten per cent interest thereon. There was some testimony respecting dividends declared and that the instant certificate received the same credit as all others of like kind. The defendant offered no testimony in support of her allegations.

The court took the matter under advisement, and on February 17, 1934, made findings which may be summarized as follows:

| | |
|---|---|
| Amount of loan............................................... | $1,600.00 |
| Interest from August 25, 1932, to July 1, 1933, at 10 per cent........ | .146.63 |
| Insurance and interest.......................................... | 4.70 |
| | $1,751.33 |
| Giving defendant credit for cash value of shares on account of dues paid.................................... $835.20 | |
| Dividends thereon ...................................... 392.51 | |
| | 1,227.71 |
| Balance ...................................................... | $523.62 |
| Interest from July 1, 1933, to February 17, 1934.................... | 33.67 |
| Total ................................................... | $557.29 |

The journal entry recites an order the plaintiff association cancel the stock certificate and credit the withdrawal value on defendant's indebtedness, and that it have judgment for $557.29, with interest from February 17, 1934, at ten per cent per annum, the mortgage was foreclosed, sale provided for, together with disposition of proceeds. The plaintiff and defendant Flossie Fitzpatrick each filed motions for a new trial, both of which motions were denied. The plaintiff has appealed and Flossie Fitzpatrick has filed a cross-appeal. For convenience, the parties will be referred to as the association and the defendant.

It may be well to observe that the object of building and loan associations is the accumulation of capital in money derived from payments by its members in periodical payments or otherwise, as provided in its by-laws, the statute authorizing the issuance of full-paid, prepaid, deposit, installment and permanent shares (R. S. 17-

1006) and rural-credit shares (R. S. 17-1052). The accumulated moneys may be loaned to the shareholders. Although other methods are provided, the association may, by by-law, dispense with offering its money for bids and in lieu thereof loan to its members at a rate of interest to be fixed in the by-laws, and in an amount not in excess of the ultimate or par value of his shares (R. S. 17-1007). This last method was followed in the instant case. For every loan made, a note and mortgage shall be given which shall be non-negotiable and nonassignable and a first lien on the real estate, with exceptions which need not be noted here, and shall be accompanied by a transfer and pledge of shares of stock of the borrowing member. (R. S. 17-1011.) In the event of default of payments of dues, interest, fines and other charges required by the by-laws for a period of six months, the association may foreclose its mortgage, in which event the defaulting borrower, in addition to the amount loaned, shall be charged with all dues, interest, premiums, fines, taxes and insurance due and in arrears, and shall have credit for the withdrawal value of his shares as provided where the shares are voluntarily withdrawn (R. S. 17-1012).

The provision for withdrawal is that the shareholder wishing to withdraw shall, subject to the provisions of the by-laws, have power to do so, and be entitled to receive the money actually withdrawable according to the by-laws and the provisions of the certificate. We need not notice provisions as to notice, limitations on the amount dependent on receipts, etc. It is further provided that no shareholder whose shares are pledged to secure a loan from the association shall be entitled to withdraw without first paying his loan. (R. S. 1933 Supp. 17-1016.) The usury laws of the state apply to the association and the total received as premiums, fines and interest shall not exceed ten per cent on the money actually borrowed (R. S. 17-1009).

Defendant insists that having paid interest at the rate of ten per cent in monthly installments, the payment of dues on her stock is an inducement to contract under R. S. 41-103, and that by reason thereof, she is entitled to monthly credits thereof on her loan; that the trial court, in not giving effect to such claimed credits, wrongly concluded as to the amount due. Such reasoning can only be followed by assuming (1) that the contract was not within the terms of the building and loan statutes, or (2) that the usury statutes take precedence of the building and loan statutes, or (3) that

the building and loan statutes must be so construed that payments of all items of interest, fines, premiums and dues on stock must not exceed ten per cent of the claimed balance remaining from time to time unpaid of the principal sum borrowed. Neither contention can be sustained. First, the note, mortgage, stock certificate and by-laws constitute the contract here, and so far as they do not contravene the statute, are enforceable according to their terms. Second, the usury statute must be read in connection with the building and loan statutes. The payment of dues is for the purpose of paying for stock which, when matured, will pay the loan; it is no inducement for the making of the loan as is denounced in R. S. 41-103. The dues being paid are allowed to accumulate and dividends are paid thereon, and when under the by-laws the shares mature the amount or value thereof is used to retire the loan. Third, the statute expressly limits the ten per cent to the payment of premiums, fines and interest. If it had been intended to include dues on stock, appropriate language could easily have been used.

The defendant further urges that we should construe the purchase of stock and the borrowing of money as one contract entered into solely to permit a loan to be made, and that the purchase of stock, with requirements for payments of dues thereon, is only a subterfuge to violate the usury laws, citing in support *Fidelity Savings Assn. v. Shea*, 6 Idaho 405, 55 Pac. 1022, which supports the contention. That case was commented on in *Fidelity Savings Assn. v. Bank*, 12 Wyo. 315, 75 Pac. 448, where it was said:

"The case of *Fidelity Savings Association v. Shea*, decided in Idaho (55 Pac. 1022), is much relied on by counsel for defendant in error. It was held in that case that a similar contract was usurious; that conclusion was reached by not only adding the interest and premium together, for, as we understand the case, the sum so found would not have exceeded the rate authorized by the statutes of Idaho, but the collection of monthly payments on account of stock dues without reducing the interest from time to time was held objectionable, in opposition to the very great weight of authority on that subject; and the transaction was treated as though the borrower was not the owner of any shares in the association. As already shown, we view the transaction in a different light.

"The authorities are so numerous sustaining contracts of this character when not in violation of some positive usury statute that it would be useless to attempt an exhaustive citation of the cases. The following are cited as fairly representing the prevailing views upon some of the questions herein discussed: (citing cases.)" (p. 353.)

Without pursuing the subject further, it may be said that our

statutes, as outlined above, make a distinction between the purchase of shares, and the note and mortgage evidencing a loan. (See *Prudential Bldg. & L. Assn. v. Greenlee,* post p. 667, 43 P. 2d 217, this day decided.)

The association complains that the court erred in allowing defendant credit for the full amount of dividends apportioned to her stock. It is undisputed that when defendant defaulted in failing to pay her dues in August, 1932, she had previously made payment of eighty-seven installments. Under the by-laws, on withdrawal, she was entitled to credit for seventy per cent of the dividends apportioned to her stock. No reason is made to appear why the by-law is not proper, and under it and R. S. 1933 Supp. 17-1015 and 17-1016, she was not entitled to full credit for the dividends, but only to seventy per cent thereof.

The association also complains that it was not allowed to deduct fines amounting to $20.80 from the value of the stock. R. S. 17-1009 provides that the total amount received for premiums, fines and interest shall not exceed ten per cent per annum. In view of the fact the interest was paid or charged at the rate of ten per cent, there was no room to allow any fine.

And lastly, the association complains because the court in rendering judgment computed amounts due as of the date of filing the petition, and not as of the date of rendering judgment. In this we think the court erred. Under R. S. 17-1012 provision is made that in event of six-months default the association may proceed, according to law, to foreclose its mortgage, in which event the borrower is charged with certain enumerated items and given credit for others. Until foreclosure was decreed, these various amounts could not be determined, and the certificate of stock was not canceled until the day judgment was rendered. The calculation of amounts chargeable to the defendant and of the amounts of credits allowable to her should have been made as of date the judgment was rendered, for that was when the mortgage was foreclosed.

The record shows that defendant's default started August 25, 1932. From what has been said, it appears the defendant should have been charged with the principal sum of $1,600 with interest thereon at ten per cent from August 25, 1932, to February 17, 1934, amounting to $236.45, and with insurance premium paid December 1, 1932, in the sum of $4.40, with interest to February 17, 1934, at ten per cent, amounting to $0.54, or a grand total of $1,841.39, and

should have been credited with dues paid of $835.20 plus seventy per cent of the dividends apportioned, totaling $392.51, or $274.75, making a total credit of $1,109.95, and leaving a balance due of $731.44, which should bear interest from February 17, 1934, at the rate of ten per cent per annum.

In so far as the judgment of the lower court fixing the amount due plaintiff association from the defendant is concerned, it is reversed, and the cause remanded with instructions to render judgment consistent herewith. In so far as foreclosure of the mortgage is concerned, the judgment is affirmed.