80 P.3d 1049

Reed **HOSKINSON**, Plaintiff–Respondent,

v.

Mary Elizabeth **HOSKINSON**, Defendant–Appellant.

No. 27786.

Supreme Court of Idaho, Pocatello, September 2003 Term.

Nov. 21, 2003.

Smith & Hancock, Rexburg, for appellant. J.D. Hancock argued.

Swafford & Duffin, Chtd., Idaho Falls, for respondent. Ronald L. Swafford argued.

SCHROEDER, Justice.

Reed Hoskinson ("Reed") and Elizabeth Hoskinson ("Elizabeth") were married February 23, 1997, and had a child that year. In 2000 Reed obtained a divorce decree against Elizabeth. Elizabeth appealed to the district court, which affirmed the magistrate judge's decision. Elizabeth argues that the magistrate judge made errors that warrant reversal of the decision, including: (1) the magistrate's decision to award primary physical custody of the child to Reed; (2) the magistrate's denial of Elizabeth's motion for leave to amend her pleadings; (3) the magistrate's characterization and division of the community property; (4) the magistrate's denial of Elizabeth's request for continuing separate maintenance and attorney fees; and (5) the magistrate's denial of Elizabeth's request for reimbursement from Reed for providing care for the child. In addition Elizabeth argues that the magistrate erred by granting Reed's petition to modify the order establishing custody and visitation of the child.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Reed and Elizabeth Hoskinson began living together in May 1995. Elizabeth learned she was pregnant with Reed's child. The couple entered a ceremonial marriage February 23, 1997. Elizabeth gave birth to their child on October 10, 1997.

On December 18, 1998, Reed sued for divorce alleging the marriage date as February 23, 1997, which is the ceremonial marriage date. Reed cited irreconcilable differences as the grounds for divorce. He requested primary physical custody of the child, but he agreed to share legal custody with Elizabeth. The complaint sought to compel Elizabeth to pay child support and to provide medical insurance coverage for the child. The complaint also requested a distribution of community assets and debts.

Elizabeth answered and counterclaimed on January 15, 1999. The answer and counterclaim were amended April 15, 1999. The amended counterclaim sought a divorce based on extreme cruelty and adultery. Both the counterclaim and amended counterclaim stated that Elizabeth and Reed were married on February 23, 1997, the same date alleged by Reed. Elizabeth requested primary physical custody of the child but agreed to share joint legal custody with Reed. Elizabeth sought to compel Reed to pay child support and to provide medical insurance coverage for the child. Elizabeth requested a disproportionate award of community property and debt as well as maintenance and attorney fees.

On the first day of trial Elizabeth moved to amend her counterclaim to allege a common law marriage date of May 1, 1995, arguing that prior interrogatories had alerted Reed to the fact that she intended to raise the issue. She suggested a continuance of the proceedings to avoid any prejudice. Both motions were denied. The magistrate based his ruling on the tardiness of the motion, the potential prejudice to Reed and the fact that Elizabeth's answer and counterclaim had both confirmed the February 23, 1997, ceremonial marriage date as the actual date of marriage for purposes of trial. The magistrate concluded that a continuance was not warranted given the age of the case, the fact that Reed would continue to be subject to the court's temporary orders, and the court's concern for the stability and welfare of the child.

Reed was granted a divorce on grounds of irreconcilable differences. Reed and Elizabeth were ordered to share joint legal and physical custody of the child, but the child would live with Reed, except during periods of reasonable visitation with Elizabeth. Elizabeth was ordered to pay Reed $195.00 monthly child support. Reed was allowed to claim the child as an exemption for income taxation but was required to pay Elizabeth $26.00 each month as reimbursement for her share of the tax savings. Reed was ordered to pay 79% and Elizabeth was ordered to pay

21% of all reasonable, net work-related child-care costs. The parties were ordered to maintain health care insurance coverage for the child when it is available through employment at a reasonable cost. The decree also divided the separate and community property and debts between Reed and Elizabeth.

The magistrate issued an order defining custody on July 24, 2000, providing that Reed would be the custodial parent, subject to extensive visitation with Elizabeth. The order also provided: "Reed shall offer Elizabeth the option of caring for the child whenever Reed is working, and Elizabeth shall offer Reed the option of caring for the child whenever Elizabeth is working." Elizabeth took advantage of this provision and provided day care for the child. The child spent approximately 48% of his time with Elizabeth during the months of July through November of 2000. However, the child spent only 25% of the nights with Elizabeth during that period.

Elizabeth appealed. Thereafter, Reed petitioned to modify child custody and visitation. Elizabeth responded and counterclaimed, seeking to modify child custody and visitation. The magistrate granted a motion by Elizabeth to amend her counterclaim to allege a material substantial change of circumstances. She also moved to require Reed to pay childcare and subsequently asked the court to enter an order requiring Reed to pay her the reasonable value of support for the care of the child while Reed is working. The magistrate denied Elizabeth's motion for compensation on the bases that: (1) if the motion was a motion to alter or amend the judgment, it was not timely; and (2) if the motion was a motion to modify the child support provisions of the divorce decree, it was not supported by a material, substantial and permanent change in circumstances.

The magistrate made oral findings of fact and conclusions of law on the motions to modify the child custody and visitation order on February 1, 2001, and filed an amended visitation order on March 30, 2001.

Elizabeth filed a notice of appeal to the district court on February 9, 2001, and an amended notice of appeal on March 21, 2001, appealing the magistrate's orders denying her compensation for providing childcare and modifying visitation.

In a decision filed August 3, 2001, the district court affirmed the decisions of the magistrate relating to: (1) custody; (2) Elizabeth's motion to amend her answer and counterclaim to allege a common law marriage date of May 1, 1995; (3) the characterization and division of the parties' property; (4) Elizabeth's counterclaim for divorce based on grounds of extreme cruelty or adultery; (5) Elizabeth's request for continuing separate maintenance; (6) certain evidentiary questions; and (7) Elizabeth's request for attorney fees and costs.

On August 22, 2001, Elizabeth sought to appeal to this Court from the memorandum decision, findings and conclusions, judgment and order entered on June 13, 2000, the magistrate's order for visitation entered on July 24, 2000, and from the district court's memorandum decision and judgment on appeal dated August 3, 2001. She filed an amended notice of appeal on August 28, 2001.

Because the district court had not yet made a decision on the appeal from the magistrate's order modifying custody/visitation, Elizabeth moved to suspend the appeal until a decision was reached. The motion was granted on the condition that she file an amended notice of appeal from that order within fourteen days from the date of its filing in the district court, at which time the appeal would proceed unless otherwise provided by an order of this Court.

The district court's second memorandum decision was filed on August 19, 2002. The district court affirmed the magistrate's decision to deny Elizabeth's motion for compensation for providing childcare as well as the magistrate's decision to grant Reed's petition to modify visitation. Elizabeth did not amend her notice of appeal to reflect the decision of the district court as required by this Court's order of February 22, 2002. Elizabeth asserts that the magistrate erred 1) by awarding primary physical custody of the child to Reed, 2) in disallowing her motion to amend to show the date of the marriage to be the date they commenced living together as husband and wife, namely, May 1, 1995, 3) in characterizing and dividing their property, 4) in failing to award her

continuing separate maintenance. Further, she argues that the magistrate abused his discretion by not properly applying the Idaho Child Support Guidelines to the evidence presented at the December 13, 2000, hearing and in modifying the custody act of July 24, 2000, by acting outside legal standards and boundaries, and by failing to use reason when he modified the order in favor of Reed. Elizabeth seeks attorney fees and costs.

## II.

## GENERAL STANDARD OF REVIEW

Since this appeal arises from a decision of the district court affirming a decision of the magistrate division, this Court will review the magistrate's decision "independently, with due regard for the decision of the district court acting in its appellate capacity." *Stevens v. Stevens*, 135 Idaho 224, 227, 16 P.3d 900, 903 (2000) (citing *Keller v. Keller*, 130 Idaho 661, 663, 946 P.2d 623, 625 (1997)). "The magistrate's findings of fact will be upheld if they are supported by substantial and competent evidence." *Worzala v. Worzala*, 128 Idaho 408, 411, 913 P.2d 1178, 1181 (1996) (citing *Smith v. Smith*, 124 Idaho 431, 436, 860 P.2d 634, 639 (1993)).

## III.

## THE MAGISTRATE DID NOT ERR IN AWARDING PRIMARY PHYSICAL CUSTODY OF THE CHILD TO REED

### A. Standard of Review

The determination of the custody of minor children is committed to the sound discretion of the trial court. Unless such discretion is abused, the court's judgment as to custody will not be upset on appeal. *Levin v. Levin*, 122 Idaho 583, 586, 836 P.2d 529, 532 (1992). This Court reviews a custody decision by asking whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason. *See Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991) (citing *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989)).

### B. The magistrate did not abuse his discretion in awarding primary physical custody of the child to Reed.

Idaho Code § 32–717 provides a directive for the trial court to determine the best interest of the children when making a custody decision. *Milliron v. Milliron*, 116 Idaho 253, 255, 775 P.2d 145, 147 (Ct.App.1989). The statute sets forth non-exclusive factors to aid in making its determination. *Id.* At the time of trial, Idaho Code § 32–717 provided in relevant part: [1]

#### Custody of Children—Best interest.

A. In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best inter-

1. Idaho Code § 32–717 was amended in 2002 and currently provides in relevant part:
 **Custody of children—Best interest.**
 (1) In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seen necessary or proper in the best interests of the children. The court shall consider all relevant factors which may include:
 (a) The wishes of the child's parent or parents as to his or her custody;
 (b) The wishes of the child as to his or her custodian;
 (c) The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;
 (d) The child's adjustment to his or her home, school, and community;
 (e) The character and circumstances of all individuals involved;
 (f) The need to promote continuity and stability in the life of the child; and
 (g) Domestic violence as defined in section 39–6303, Idaho Code, whether or not in the presence of the child.
 2002 Idaho Sess. Laws ch. 232, sec. 1, p. 664. The 2002 amendment will not affect the substantive rights of the parties in this case. *See* Idaho Code § 73–101 ("No part of these compiled laws is retroactive, unless expressly so declared."). Moreover, it is questionable whether a retroactive application of the 2002 Code would have a substantial impact since the 2002 amendment

est of the children. The court shall consider all relevant factors, which may include:

1. The wishes of the child's parent or parents as to his or her custody;

2. The wishes of the child as to his or her custodian;

3. The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;

4. The child's adjustment to his or her home, school, and community;

5. The mental and physical health and integrity of all individuals involved;

6. The need to promote continuity and stability in the life of the child; and

7. Domestic violence as defined in Idaho Code § 39–6303 whether or not in the presence of the child.

1995 Idaho Sess. ch. 128, § 1 p. 561.

 In conjunction with Idaho Code § 32–717, "a child's welfare and best interests are of paramount importance." *Roeh v. Roeh*, 113 Idaho 557, 558, 746 P.2d 1016, 1017 (Ct.App.1987) (citing *Shumway v. Shumway*, 106 Idaho 415, 418, 679 P.2d 1133, 1136 (1984)). Idaho Code § 32–717 gives a judge wide discretion regarding custody decisions, subject to some restrictions. However, the trial court "must avoid considering irrelevant factors." *Id.* The trial court must also avoid assigning too much weight to any particular factor, *Moye v. Moye*, 102 Idaho 170, 172, 627 P.2d 799, 801 (1981), and base its findings of fact upon substantial and competent evidence. *Osteraas v. Osteraas*, 124 Idaho 350, 352–53, 859 P.2d 948, 950–51 (1993).

 Elizabeth argues that the magistrate's decision awarding primary physical custody to Reed was unsupported by a preponderance of the evidence presented at trial. In support of her position she offers the following jury instruction which this Court indorsed in *Big Butte Ranch, Inc. v. Grasmick*, 91 Idaho 6, 9 n. 2, 415 P.2d 48, 51 n. 2 (1966) as a correct definition of the phrase "preponderance of the evidence":

Defendant has the burden of proving the allegations of his counterclaim by a preponderance of the evidence.

constituted only a minor change in the language

By a preponderance of the evidence is meant such evidence as, when weighed with that opposed to it, has more convincing force and from which it results that the greater probability of truth lies therein. In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue preponderates, that is, has the greater convincing force, then your finding upon that issue must be against the party who had the burden of proving it.

Essentially, Elizabeth claims that there was not a preponderance of the evidence by which the magistrate could support his decision to award primary physical custody of the child to Reed.

 *Big Butte* is not controlling on this Court's review of the magistrate's decision to award primary physical custody of the child to Reed. *Big Butte* involved a contract dispute between Big Butte Ranch, Inc. and Hank Grasmick (d/b/a Grasmick Produce Co.). *Id.* at 8, 415 P.2d at 50. This case involves the proper standard of review of a magistrate's decision to award primary physical custody of a minor child pursuant to Idaho Code § 32–717. This Court reviews such decisions for an abuse of discretion. *Levin,* 122 Idaho at 586, 836 P.2d at 532. In determining whether the magistrate abused his discretion in awarding physical custody of the child to Reed, this Court must first determine whether the magistrate "correctly perceived the issue as one of discretion." *See Polk v. Larrabee,* 135 Idaho 303, 312–13, 17 P.3d 247, 256–57 (2000) (citing *Sun Valley,* 119 Idaho at 94, 803 P.2d at 1000). In his findings of fact, the magistrate stated:

The court's statement in *Merriam v. Merriam,* 799 P.2d 1172, 1178 (Utah App. 1990), applies here: "[C]hild custody decisions in divorce are often heart-wrenching and extremely difficult. The process involved in determining a child's best interest often fails to yield crystal clear answers." *In the end, the custody issue is one of discretion.*

of I.C. § 32–717.

(emphasis added). The magistrate recognized his decision to award custody was discretionary.

■ Second, this Court must determine "whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it." *Polk*, 135 Idaho at 312–13, 17 P.3d at 256–57. The magistrate made extensive findings on the issue of custody. The magistrate found that Elizabeth provided the majority of the child's care, while Reed provided care to a lesser degree. Both Reed and Elizabeth have a loving relationship with the child. However, the magistrate found that Elizabeth demonstrated disregard for the court's orders; she demonstrated a propensity for dishonesty; and, she has difficulty controlling her anger and has sometimes unreasonably prevented visitation between Reed and the child. The magistrate also found that Elizabeth has not fostered a close relationship between Reed and the child, sometimes drinks to excess and sometimes uses alcohol together with prescription antidepressants. Elizabeth alleged dishonest conduct by Reed but did not offer corroborating evidence. The magistrate did not adopt these incidences in his findings of fact. Finally, the magistrate found that Elizabeth suffered intermittently from depression.

The magistrate tracked the factors found in Idaho Code § 32–717 and determined that the child would benefit in the long run if Reed obtained primary physical custody. There is little point in detailing the strengths and weaknesses of the parties in this opinion beyond the summary in the findings of fact and conclusions of law.

Here, the court has tried to review, evaluate, and weigh the evidence carefully under the guiding legal standard, Idaho Code § 32–717. The court must base its decision on a consideration of all relevant factors, *see, e.g., Dymitro v. Dymitro*, [129 Idaho 527], 927 P.2d 917 (Idaho Ct.App. 1996), after assigning appropriate weight to each factor, *see, e.g., Moye v. Moye*, 102 Idaho 170, 627 P.2d 799 (1981), and while avoiding irrelevant factors, *see, e.g. Roeh v.*

*Roeh*, 113 Idaho 557, 558, 746 P.2d 1016, 1017 (Ct.App.1987).

9. The court wishes that Reed and Elizabeth could have worked together and decided for themselves what custody arrangements would be best for their child. Their failure to agree forces the court to make a decision that may cause heartache for one party or the other. Some facts lend support to each party's position. The stability that Reed offers, Elizabeth's anger problems, her disregard for the court's orders, and her disregard for Reed's parenting rights have weighed heavily in the court's mind. Based on all relevant facts, the court finds as follows: Elizabeth and Reed should share joint legal and physical custody of their child, but the child should live with Reed except during periods of reasonable visitation with Elizabeth as described below.

In deciding to award custody of the child to Reed the magistrate balanced the evidence and weighed the relevant factors, including those found in former Idaho Code § 32–717. The magistrate's decision regarding custody was reached by an exercise of reason.

■ The magistrate's factual findings are supported by substantial evidence in the record. If the trial court's factual findings are supported by substantial, though conflicting, evidence in the record, they must be accepted on appeal. *Jensen v. Jensen*, 124 Idaho 162, 164, 857 P.2d 641, 643 (Ct.App. 1993). The trier of fact is in a unique position to make determinations of credibility and to discern the import of the testimony. *Miller v. Mangus*, 126 Idaho 876, 880, 893 P.2d 823, 827 (Ct.App.1995). The question is not whether this Court would have awarded custody in the manner the magistrate did, but whether the award was an abuse of discretion. *Osteraas*, 124 Idaho at 352, 859 P.2d at 950.

The magistrate's decision to award primary physical custody of the child to Reed was not an abuse of discretion and is affirmed by this Court.

## IV.

## THE MAGISTRATE DID NOT ABUSE HIS DISCRETION IN DENYING ELIZABETH'S MOTION FOR LEAVE TO AMEND PLEADINGS

### AND MOTION TO CONTINUE THE TRIAL

Elizabeth maintains that the magistrate erred in denying her motion to amend the pleadings to add a claim of common law marriage. She claims her former attorney did not properly plead the issue despite the validity of common law marriages in Idaho prior to January 1, 1996, but that in any event she placed all parties on actual notice of her contention in an August 18, 1999, document entitled "Statement of Certification of Compliance," stating the effective date of the marriage as May 1, 1995. She would be entitled to an increased share of property that would be community property if the date of marriage were changed from February 23, 1997 to May 1, 1995.

### A. Standard of Review

"A court's decision to deny an amendment to pleadings is reviewed by this Court for an abuse of discretion." *Hough v. Fry,* 131 Idaho 230, 232, 953 P.2d 980, 982 (1998) (citing *Southern Idaho Production Credit Ass'n v. Gneiting,* 109 Idaho 493, 708 P.2d 898 (1985)). In determining whether the trial court has abused its discretion, this Court applies the three-factor test fashioned in *Sun Valley,* 119 Idaho at 94, 803 P.2d at 1000. These three factors are: (1) whether the trial court correctly perceived the issue as one of discretion, (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it, and (3) whether the trial court reached its decision by an exercise of reason. *Id.*

### B. The magistrate did not abuse his discretion by denying Elizabeth leave to amend her pleadings and motion for a continuance of the trial.

I.R.C.P. Rule 15(a) governs amendments to the pleadings and provides the following:

A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within twenty (20) days after it is served. Otherwise a party may amend a pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires, and the court may make such order for the payment of costs as it deems proper. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within ten (10) days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

I.R.C.P. 15(a) provides that leave to amend "shall be freely given when justice so requires." However, this Court has upheld trial courts' decisions to deny amendments on the eve of trial. *See Jones v. Watson,* 98 Idaho 606, 610, 570 P.2d 284, 288 (1977) (finding no abuse of discretion in denying amended complaint filed the day of trial); *Dairy Equip. Co. of Utah v. Boehme,* 92 Idaho 301, 304, 442 P.2d 437, 440 (1968) (holding no abuse of discretion when amended complaint was filed five days prior to trial).

Elizabeth sought to amend her answer and counterclaim on the morning of the first day of trial. The magistrate concluded that given the time and money Reed had expended in preparing for trial, "prejudice would result to [Reed] if the Court allowed the amendment and pleading...." This was because Reed had "not prepared his case to respond to an allegation of a common-law marriage because it wasn't raised in the pleadings." The magistrate recognized he had the discretion to allow or deny the amendment. *See Baxter v. Craney,* 135 Idaho 166, 169, 16 P.3d 263, 266 (2000). Because Rule 15(a) requires the court to allow amendments only when justice requires, the magistrate's decision to deny the amendment was

both within the bounds of his discretion and within applicable legal standards. *See id.*

The magistrate noted that the pleadings established the date of marriage as February 23, 1997. The magistrate found "it was incumbent upon her to raise [a common law marriage] in her pleadings," reasoning that Reed and his attorney were entitled to rely on the pleadings prepared for trial. Moreover, the magistrate concluded that a continuance would be an abuse of discretion given: (1) the expenses of the parties to date, (2) the added expenses that a continuance would entail, (3) the convenience of subpoenaed witnesses, (4) the age of the case, (5) the fact that Reed would be forced to live under the court's temporary orders during the period of the continuance, and (6) the impact a continuance would have on the stability and well-being of their minor child. After "putting all of those different items on the scale," the magistrate decided that a continuance should not be granted.

The magistrate did not abuse his discretion in denying Elizabeth's motion to amend. *See Dairy Equip.*, 92 Idaho at 304, 442 P.2d at 440.

## V.

## THE MAGISTRATE DID NOT ERR IN THE CHARACTERIZATION AND DIVISION OF THE PROPERTY.

Elizabeth argues that the magistrate erred by applying the ceremonial marriage date of February 23, 1997, rather than the common law marriage date of May 1, 1995, for purposes of property characterization and division. As a result, she claims the following assets were improperly classified as separate property: (1) the foal crop; (2) hunting and fishing equipment and yard tools; (3) personal property acquired from May 1, 1995, to February 23, 1997; (4) the increase to Reed's retirement and savings from May 1, 1995, to February 23, 1997; and (5) the increase to the value of Reed's home from May 1, 1995, to February 23, 1997.

Elizabeth asserts two other grounds upon which she claims an entitlement to an interest in Reed's home. First, she claims that a 1998 quitclaim deed conveyance from Reed to her and Reed effectively transmuted the property into community property. Second, she argues that she is entitled to an interest in the increased value of the home due to community expenditures, labor and improvements made during marriage.

Elizabeth also claims a one-half interest in a $15,000 withdrawal Reed made from his investment plan after the divorce was filed for which he gave no accounting at trial. Additionally she maintains that the magistrate based Reed's award on grossly exaggerated property values. In support of her claim she offers portions of Reed's testimony in which he admits not knowing the worth of certain restored photographs. She contends Reed improperly valued the oak desk and bookcases at their replacement cost, rather than the amount these items were worth at the time of trial. She cites inconsistency in Reed's testimony concerning estimated repair costs for damages Elizabeth caused to Reed's home. Apparently, Reed estimated the repair cost at $500, but on cross-examination conceded that he repaired the damage at a cost of $9.00. Finally, she cites impeaching testimony from a witness for Reed who testified that Reed's trout fish mount cost $10.00 per inch, not $12.50, as Reed had previously testified.

### A. Standard of Review

■ The division of community property is subject to the sound discretion of the trial court, whose determination will be upheld on appeal in the absence of a clear showing of an abuse of discretion. *McNett v. McNett,* 95 Idaho 59, 61, 501 P.2d 1059, 1061 (1972).

### B. The magistrate properly characterized and divided the community property based on the February 23, 1997, ceremonial marriage date, rather than the alleged May 1, 1995, common law marriage date.

Idaho Code § 32–903, provides:

All property of either the husband or the wife owned by him or her before marriage, and that acquired afterward by either by gift, bequest, devise or descent, or that which either he or she shall acquire with

the proceeds of his or her separate property, shall remain his or her sole and separate property.

▉ The magistrate characterized and divided the couple's separate property based on the ceremonial marriage date of February 23, 1997, and did not address the issue as to whether a common law marriage existed as of May 1, 1995. Elizabeth was denied leave to amend her pleadings to reflect a claim of common law marriage. This decision was within the magistrate's discretion. Neither Reed nor Elizabeth presented evidence regarding the existence of a common law marriage, and the magistrate did not make findings of fact or conclusions of law on the issue. Under the state of the record in this case all property obtained by either party prior to February 23, 1997, as well as any natural increase in its value from May 1, 1995, to February 23, 1997, is separate property. The magistrate properly characterized the property based on the February 23, 1997, ceremonial marriage date.

**C. The magistrate's finding that the 1998 quitclaim deed from Reed to himself and Elizabeth did not transmute Reed's home from separate to community property is supported by substantial competent evidence.**

▉ Elizabeth argues that the magistrate erred by finding Reed's house was his separate property. In 1998 Reed's home was the subject of two separate quitclaim deeds. In one deed Elizabeth conveyed her interest in the property to Reed. In the other deed Reed conveyed his interest in the same property to himself and Elizabeth, as "husband and wife." Both deeds were signed and notarized on January 23, 1998. The conveyance from Elizabeth to Reed was recorded the same day. The conveyance from Reed to himself and Elizabeth was recorded on February 9, 1998. Elizabeth claims the second conveyance transmuted Reed's property from separate to community property.

"[A]lthough husband and wife may elect at any time to change their property rights, they must engage in certain formalities." *Wolford v. Wolford,* 117 Idaho 61, 66, 785 P.2d 625, 630 (1990) (quoting *Stockdale v.*

*Stockdale,* 102 Idaho 870, 873, 643 P.2d 82, 85 (Ct.App.1982)). Idaho Code § 32–917 prescribes the requisite formalities as follows: "All contracts for marriage settlements must be in writing, and executed and acknowledged or proved in like manner as conveyances of land are required to be executed and acknowledged or proved." The burden of proof on the party asserting transmutation is a high one, as the Idaho Court of Appeals described in *Ustick v. Ustick,* 104 Idaho 215, 222, 657 P.2d 1083, 1090 (Ct.App.1983):

> [W]here it is asserted ... that a spouse intended to transmute property or to make a gift, the burden is on the party urging the assertion to prove the intent in question by clear and convincing evidence. [citations omitted]. Concomitantly, because the question of whether a "clear and convincing" burden of proof has been met is a question for the trier of facts to decide in the first instance, the determination of the trial judge—that a claim was not shown by clear and convincing evidence—is entitled to great weight on appeal. [citations omitted].

In applying Idaho Code § 32–917 to the evidence presented at trial, the magistrate made the following findings and conclusion regarding Elizabeth's claim that Reed's quitclaim deed transmuted his separate property into community property:

> Here, the parties offered conflicting evidence of the intent behind the quitclaim deeds. Elizabeth testified that Reed asked her to sign a quitclaim deed to facilitate the financing and that she refused to sign until Reed agreed to sign a deed conveying the property to her and Reed. Reed denied that allegation. He testified he signed the quitclaim deed simply because the lender presented it to him during the loan closing, that he signed it along with many other papers the lender presented to him, and that he had no intent to transmute his property into community property. Reed notes that he alone signed the promissory note for the new loan. Under these circumstances, the court finds that Elizabeth has not proved a transmutation by clear and convincing evidence. The evidence did not establish that Reed

intended to make a gift to the community. The evidence did not establish whether the deed to Reed and Elizabeth was signed before or after the deed to Reed. As noted above, Elizabeth damaged her credibility with her lack of candor during her testimony on other issues; therefore, the court is inclined to believe Reed's testimony on the issue.

A trial court's decision will be upheld despite conflicting evidence so long as its findings are supported by substantial competent evidence and are not clearly erroneous. *Golder v. Golder,* 110 Idaho 57, 61, 714 P.2d 26, 30 (1986). The magistrate found Elizabeth failed to sustain her burden of proving a transmutation. These findings are supported by substantial competent evidence.

**D. The magistrate's decision to deny reimbursement to the community for alleged enhancements to Reed's separate property due to expenditures of community funds and labor is supported by substantial competent evidence.**

▮ Elizabeth argues that the community expended funds and efforts on Reed's home during the marriage for which the community is entitled a reimbursement. In particular she claims the improvements to the house during the marriage include the remodeling of the kitchen and the purchase of the hot tub, patio, deck, greenhouse, power cable, toilet seats, new carpet, perennials, trees, shrubs and flowers. She contends she should have been awarded one half of the increase in the value of Reed's house.

This Court stated the general rule with regard to reimbursements for enhancements to separate property resulting from dedication of community funds in *Bliss v. Bliss,* 127 Idaho 170, 172–73, 898 P.2d 1081, 1083–84 (1995):

> It is well established that when community funds are used to enhance the value of one spouse's separate property, such enhancement is community property for which the community is entitled to reimbursement, unless such funds used for enhancement are intended as a gift. *E.g., Suchan v. Suchan,* 106 Idaho 654, 661, 682 P.2d 607,

614 (1984); *Suter v. Suter,* 97 Idaho 461, 465, 546 P.2d 1169, 1173 (1976); *Gapsch v. Gapsch,* 76 Idaho 44, 53, 277 P.2d 278, 283 (1954).. In *Gapsch,* this Court held that community funds spent to reduce the principal of a mortgaged indebtedness on one spouse's separate property retain their character as community property and can be reimbursed. As the Court explained, in situations where a spouse's equity in property has been increased through the application of community funds to the payment of debt on the property, the measure of reimbursement to the community should be the amount by which such equity is enhanced. *Id.*

* * *

The measure of the reimbursement for community expenditures on separate property is the increase in value of the property attributable thereto, not the amount or value of the community contribution. *Suter, supra, Hiatt v. Hiatt,* 94 Idaho 367, 368, 487 P.2d 1121, 1122 (1971). The party seeking such reimbursement to the community carries the burden of demonstrating that the community expenditures have enhanced the value of the separate property, and the amount of the enhancement. *Hooker v. Hooker,* 95 Idaho 518, 521, 511 P.2d 800, 803 (1972).

This Court has also stated "the natural enhancement of a separate property asset due to market trends, inflation, etc., and which is not attributable to community efforts or to rents and profits of the assets, is separate property." *Mifflin v. Mifflin,* 97 Idaho 895, 896, 556 P.2d 854, 855 (1976).

The magistrate found that some of the alleged improvements (the hot tub, the patio, the deck, and the carpeting) were made before the marriage and would not require reimbursement. This finding is supported by substantial competent evidence.

The magistrate also found that the evidence did not establish the amount, if any, of enhancement in the value the other alleged improvements (the power cable, the greenhouse, the paint for the cabinets, and the toilet seats) added to the home. This finding

was supported by substantial competent evidence.

Elizabeth failed to meet her burden of demonstrating that the community expenditures enhanced the value of Reed's separate property and the amount of the enhancement. *See Bliss,* 127 Idaho at 172–73, 898 P.2d at 1083–84. The magistrate's decision to deny the community reimbursement is affirmed.

**E. Elizabeth has not rebutted the presumption that Reed's $15,000 withdrawal from his investment plan was used for the benefit of the community.**

 There is a presumption that all property acquired after marriage is community property. *Barton v. Barton,* 132 Idaho 394, 396, 973 P.2d 746, 748 (1999). Likewise, expenditures and indebtedness that occur during the marriage are presumed to be for the benefit of the community. *See Simplot v. Simplot,* 96 Idaho 239, 246, 526 P.2d 844, 851 (1974). This presumption may be rebutted. *Gardner v. Gardner,* 107 Idaho 660, 662, 691 P.2d 1275, 1277 (Ct.App.1984). The party asserting that the property is separate has the burden of showing with reasonable certainty that the property is separate. *Winn v. Winn,* 105 Idaho 811, 813, 673 P.2d 411, 413 (1983).

 Elizabeth argues that she is entitled to one half of $15,000 Reed withdrew from his investment plan because Reed has not given an accounting of how or where the money was spent. Reed testified that he withdrew the $15,000 from his investment plan "to pay bills" above and beyond those he normally would have incurred which were necessitated by the divorce process. Reed also testified that the primary reason for the $15,000 withdrawal was the payment of these debts. Elizabeth did not rebut Reed's testimony.

Based on the evidence presented at trial, the magistrate stated:

Both parties made extraordinary withdrawals during the separation. Elizabeth took several thousands of dollars from a home equity line of credit; Reed withdrew $15,000 from his INEEL Investment plan and $2,500.00 from a 20th Century Ultra account. Both testified that they used the money to pay living expenses and debt payments during the separation. Unless shown to the contrary, expenditure made and indebtedness incurred during the marriage are presumed to be for the benefit of the community. *See, Gardner v. Gardner,* 107 Idaho 660, 691 P.2d 1275 (Ct.App. 1984). Accordingly, a party who contends that his or her spouse took money or incurred a separate debt during the marriage has the burden of overcoming the presumption that the spouse used the money for a community purpose. Here, neither party met that burden, and the court will not order either to reimburse the community.

It was Elizabeth's burden to establish that Reed used the $15,000 withdrawal for something other than to benefit the community—it was not Reed's burden to prove otherwise. *See Simplot,* 96 Idaho at 246, 526 P.2d at 851. Elizabeth did not present any credible evidence to indicate that Reed spent the $15,000 on something other than the community. Thus, Elizabeth did not overcome the applicable presumption.

The magistrate's refusal to include Reed's $15,000 withdrawal as part of Elizabeth's distributive share of the community assets is affirmed.

**F. Miscellaneous items of property**

*1. The foal crop*

 Elizabeth claims a one-half interest of the foal crop. The magistrate concluded the foals were community property and awarded them to Reed. Elizabeth has not shown how this award was unfair or in error, especially since the community property was not equally divided, but was divided in her favor.

*2. Hunting and fishing equipment and yard tools*

 Elizabeth also claims an interest in Reed's hunting and fishing equipment and yard tools. The magistrate found that Reed acquired both the hunting and fishing equip-

ment and yard tools prior to the February 23, 1997, ceremonial marriage, and therefore, these items were his separate property. Since the February 23, 1997, date is the proper marriage date for purposes of property characterization and division the magistrate's finding in this regard is affirmed.

## VI.

## THE MAGISTRATE DID NOT ERR IN FAILING TO AWARD ELIZABETH CONTINUING SEPARATE MAINTENANCE

Elizabeth claims the magistrate erred in failing to award her continuing separate maintenance. Elizabeth cites the disparity in gross monthly income between her ($600.00) and Reed ($7,290.00), as well as the standard of living during the marriage as support for her contention. According to Elizabeth, the couple agreed that she would not work outside the home until the child began kindergarten. Elizabeth wishes to return to school in order to obtain a Masters Degree in social work and claims she should have been awarded at least $500.00 per month to be continued for four to six years, thereby giving her the opportunity to obtain a college degree.

### A. Standard of Review

■■■■ This Court's review of a trial court's award or denial of maintenance is whether there was an abuse of discretion, as stated in *Theiss v. Theiss*, 112 Idaho 681, 682, 735 P.2d 992, 993 (1987):

A spousal support order is a matter committed to the sound discretion of the trial court and will not be disturbed unless that discretion has been abused. The district court, when sitting as an appellate court, must review the trial court's (magistrate's) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those

findings are so supported and the conclusions follow therefrom, and if correct legal principles have been applied, then the district court's decision affirming a magistrate's judgment will be upheld on further appeal. Conversely, if the magistrate's findings are not supported by the facts, or if incorrect legal principles have been applied, then we are not bound by the district court's decision affirming the magistrate's judgment.

### B. The magistrate did not abuse his discretion when he denied Elizabeth's request for continuing separate maintenance.

■■■■ Pursuant to Idaho Code § 32–705(1), a trial court has the discretion to "grant a maintenance order if it finds that the spouse seeking maintenance: (a) lacks sufficient property to provide for his or her reasonable needs; and (b) is unable to support himself or herself through employment."

Elizabeth introduced an exhibit with an estimate of her living expenses. The magistrate determined the evidence presented at trial suggested Elizabeth's expenses would differ from her listed expenses. Specifically, her food and miscellaneous expenses would be lower since the child would be living with Reed, and she will have to pay child support. The magistrate also concluded that Elizabeth could reduce her monthly budget by moving into her rental home when the current tenant's lease expires. Elizabeth did not list her income tax expenses, which the magistrate estimated at about thirty percent of her gross income. The magistrate also determined that Elizabeth was voluntarily underemployed. Therefore, the magistrate estimated her income based on what she was capable of earning.[2] Based on that estimate, the magistrate concluded "Elizabeth's employment income will fall about $250.00 short of paying her living expenses each month, **not** including payments on installment debt (other than her home loan) and attorney fees." (emphasis in original).

2. The magistrate found Elizabeth's potential annual earnings from employment are about $19,968.00. The magistrate's finding regarding Elizabeth's potential income is based on substantial and competent evidence indicating she previously earned $20,000 working part-time for two years.

In considering whether Elizabeth had sufficient property to provide for her reasonable needs, the magistrate pointed out the fact that "Elizabeth will have two major assets following the divorce: her interest in Reed's retirement plan[3] and her interest in her home." According to the magistrate, "Elizabeth could apply all or a portion of her interest in the retirement accounts to her post divorce support."

The magistrate also considered the factors provided in Idaho Code § 32–705(2) which provides the following:

The maintenance order shall be in such amounts and for such periods of time that the court deems just, after considering all relevant factors which may include:

(a) The financial resources of the spouse seeking maintenance, including the marital property apportioned to said spouse, and said spouse's ability to meet his or her needs independently;

(b) The time necessary to acquire sufficient education and training to enable the spouse seeking maintenance to find employment;

(c) The duration of the marriage;

(d) The age and the physical and emotional condition of the spouse seeking maintenance;

(e) The ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance;

(f) The tax consequences to each spouse;

(g) The fault of either party.

The magistrate applied each of these statutory factors to the circumstances of this case, focusing on the following: (1) because Elizabeth's financial circumstances are tight, the magistrate made an unequal division of the community debts, requiring Reed to pay a disproportionately large share; (2) although Elizabeth testified it would take her six years to earn a masters degree in social work, she already has training and experience that would allow her to find full-time employment quickly;[4] (3) the parties were married for less than 40 months and the divorce was pending for almost half of the marriage; (4) Elizabeth was 39 years old at the time of trial, and she was in good health; (5) Reed has the ability to pay $500 of monthly alimony; and (6) Elizabeth failed to prove—by a wide margin—that Reed was guilty of extreme cruelty and adultery.

The magistrate considered all of these factors and found that Elizabeth could meet her monthly expenses through employment in conjunction with her share of Reed's retirement plan and the equity in her house. Therefore, the magistrate determined Elizabeth was not entitled to an award of continuing separate maintenance.

The magistrate's careful and deliberate application of Idaho Code § 32–705 is supported by substantial competent evidence. The decision to deny Elizabeth's request for continuing separate maintenance is affirmed.

## VII.

**THE QUESTION OF WHETHER THE MAGISTRATE ABUSED HIS DISCRETION BY NOT PROPERLY APPLYING THE IDAHO CHILD SUPPORT GUIDELINES TO THE EVIDENCE PRESENTED AT THE DECEMBER 13, 2000, HEARING IS NOT PROPERLY BEFORE THE COURT**

Elizabeth claims the magistrate abused his discretion by failing to adhere to the Idaho Child Support Guidelines. Specifically, she argues the magistrate did not use the shared custody percentages based upon the actual time Reed and Elizabeth spent with the child

**3.** Elizabeth's interest in Reed's retirement plan consists of one half of the $5,319 increase in Reed's INEEL Retirement Account and one half of the $79,213 increase in Reed's INEEL Investment Plan. Therefore, Elizabeth's total interest in Reed's retirement plan equals $42,266.

**4.** Elizabeth testified that she attended Central Washington University between 1983 and 1986.

Elizabeth also testified that she became a licensed insurance agent in April 1996, worked as a waitress in Seattle for a year beginning in March 1991, as a waitress in Idaho Falls for two and a half years following that, and as a saleswoman at a furniture store beginning in October 1994. She held the position at the furniture store until March 9, 1996.

pursuant to Rule 6(c)(6)(e). She also contends the magistrate did not use the incomes testified to by Reed and Elizabeth and that he had no proper basis to impute income of $20,000.00 per year to her based upon her part-time income of 1995 and 1996. Finally, she claims the magistrate disregarded her need to complete her education and that the magistrate should have awarded her spousal maintenance, which should then be added to Elizabeth's actual income for child support calculations. The merits of these arguments are not properly before the Court.

### A. Elizabeth's violation of this Court's March 14, 2002 Order bars her from appealing the issues addressed in the District Court's August 19, 2002 Memorandum Decision.

On February 22, 2002, Elizabeth filed in this Court a motion to suspend the appeal until the district court decision on appeal was entered. As grounds for the motion, she claimed "[t]he District Court has not yet made a decision on the appeal from the Magistrate's Order Modifying Custody/Visitation dated March 30th, 2001." This Court granted Elizabeth's motion on March 14, 2002. The Order suspended the appeal "until a decision is entered by the District Court with regard to the appeal from the Magistrate Order of March 30, 2001." The Order further provided that Elizabeth "shall file an Amended Notice of Appeal from that Order within fourteen (14) days from the date of its filing in the District Court at which time this appeal shall proceed unless otherwise provided by an Order of this Court."

On August 19, 2002, the district court filed its decision which affirmed the magistrate's denial of her motion for child support and/or compensation for providing childcare. The district court concluded that if Elizabeth's motion was a motion to alter or amend the divorce decree, it was untimely pursuant to I.R.C.P. 59(e). Further, she had not shown the parties shared custody of the child. Finally, the motion to modify child support was not based on a material, substantial and permanent change in circumstances.

The district court also affirmed the magistrate's modification of visitation. The district court found that there existed substantial evidence that the daily exchanges of custody resulted in confrontation between Reed and Elizabeth. The district court also found there was substantial evidence that the continued disruption and lack of routine in childcare was not in the child's best interest.

Regardless of the merits of the decisions, Elizabeth did not amend her notice of appeal to add a challenge to the district court's August 19, 2002, decision which violated this Court's March 14, 2002, order, and she is barred from challenging the decision of the district court on appeal to this Court.

### B. Absent a timely appeal of the district court's August 19, 2002 memorandum decision, this Court is without jurisdiction to review that decision.

Idaho Appellate Rule (I.A.R.) 11 grants "an appeal as a matter of right" to the Supreme Court from certain judgments and orders. Pursuant to I.A.R. 14, such appeals are made effective "only by physically filing a notice of appeal with the clerk of the district court within 42 days from the date evidenced by the filing stamp of the clerk of the court on any judgment, order or decree of the district court appealable as a matter of right in any civil or criminal action." Failure to physically file a notice of appeal is jurisdictional. As I.A.R. 21 provides:

> The failure to physically file a notice of appeal or notice of cross-appeal with the clerk of the district court or an administrative agency, or the failure to physically file a petition for rehearing with the clerk of the Supreme Court, each within the time limits prescribed by these rules, *shall be jurisdictional and shall cause automatic dismissal of such appeal or petition,* upon the motion of any party, or upon the initiative of the Supreme Court.

I.A.R. 21 (emphasis added).

Elizabeth's failure to timely amend her Notice of Appeal to add a challenge to the district court's August 19, 2002, decision deprived this Court of jurisdiction to review that decision. Therefore, her appeal is dis-

missed to the extent that it challenges the district court's August 19, 2002, decision.

## VIII.

### THE QUESTION OF WHETHER THE MAGISTRATE ABUSED HIS DISCRETION IN MODIFYING THE CHILD CUSTODY ORDER OF JULY 24, 2000, BY ACTING OUTSIDE LEGAL STANDARDS AND BOUNDARIES, AND BY FAILING TO USE REASON WHEN HE MODIFIED THE ORDER IN FAVOR OF REED IS NOT PROPERLY BEFORE THE COURT

Elizabeth claims the magistrate abused his discretion when he modified the July 24, 2000, Child Custody Order in favor of Reed. She argues that Reed failed to show that the modification would be in the child's best interest and failed to show any substantial, material and permanent change in the circumstances of the parties. This issue was appealed to the district court which affirmed the magistrate's decision. Elizabeth did not file an amended notice of appeal from the district court opinion. Elizabeth's challenge to the modification of the July 24, 2000, child custody order will not be considered for the reasons stated in part III.

## IX.

### THE MAGISTRATE DID NOT ABUSE HIS DISCRETION IN DENYING ELIZABETH ATTORNEY FEES AND COSTS

Elizabeth claims she is entitled to attorney's fees and costs pursuant to Idaho Code § 32–704(3). According to Elizabeth, she is entitled to attorney fees given: (1) the disparity between her monthly income and Reed's monthly income and (2) her belief that Reed's motion to modify the magistrate's visitation order was not brought in good faith.

### A. Standard of Review

The decision to award attorney fees is discretionary and absent an abuse of that discretion, a trial court's grant or denial of attorney fees will not be disturbed on appeal. *Antill v. Antill,* 127 Idaho 954, 958, 908 P.2d 1261, 1265 (Ct.App.1996). When a trial court's discretionary decision is reviewed on appeal, this Court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the court reached its decision by an exercise of reason. *See Sun Valley,* 119 Idaho at 94, 803 P.2d at 1000 (1991) (citing *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989)).

### B. The magistrate did not abuse his discretion when he denied Elizabeth's request for attorney fees and costs.

Idaho Code § 32–704(3) provides:

The court may from time to time after considering the financial resources of both parties and the factors set forth in section 32–705, Idaho Code, order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this act and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

Idaho Code § 32–705 governs a trial court's award or denial of spousal maintenance. Idaho Code § 32–704 provides that in analyzing a request for attorney fees and costs, the trial court should consider "the financial resources of both parties and the factors set forth in section 32–705." Recognizing that the resolution of the issue of maintenance and attorney fees would turn partly on the factors listed in Idaho Code § 32–705, the magistrate combined his discussion of Elizabeth's request for maintenance with his discussion of her request for attorney fees and costs. The magistrate denied Elizabeth's request for continuing sepa-

rate maintenance and determined that each party should bear his or her own fees.

The magistrate's decision to deny Elizabeth's request for continuing separate maintenance was supported by substantial competent evidence. It follows that the same evidence is sufficient to support the denial of her request for attorney fees and costs.

## X.

**ELIZABETH IS BARRED FROM RAISING ANY CHALLENGE TO THE DISTRICT COURT'S AUGUST 19, 2002, MEMORANDUM AND DECISION, WHICH DENIED HER REQUEST FOR ATTORNEY FEES AND COSTS RELATING TO HER MARCH 21, 2001 APPEAL**

Elizabeth is barred from raising any challenge to the district court's August 19, 2002, memorandum and decision, which denied her request for attorney fees and costs. She did not properly appeal that decision as required by I.A.R 14. She failed to comply with this Court's Order requiring her to amend her Notice of Appeal to add a challenge to the district court's August 19, 2002, memorandum and order.

## XI.

### CONCLUSION

The judgment entered in the magistrates division is affirmed. The challenges to the issues encompassed in the district court's August 19, 2002, decision are barred for failure to appeal those decisions. Reed Hoskinson is awarded costs. No attorney fees are awarded.

Chief Justice TROUT, Justices KIDWELL, EISMANN and BURDICK concur.